**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

GENWORTH LIFE INSURANCE  )
COMPANY,                  )
                          )
        Plaintiff,          )
                          )     No. 21-cv-02873
    v.                    )
                          )     Judge Andrea R. Wood
BENITA MONIQUE CATHEY, et al.,  )
                          )
        Defendants.        )

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Genworth Life Insurance Company ("Genworth") brought this interpleader action to resolve conflicting claims to the death benefit of a single premium deferred annuity contract ("Annuity Contract") that it issued to June A. Lee ("June"). Normally, in an interpleader action, the plaintiff is a neutral stakeholder that holds funds but makes no claim to any portion of those funds and is therefore dismissed once it is determined that interpleader is available and appropriate. Thus, because this Court has already determined that interpleader is warranted and Genworth has deposited its admitted liability with the Clerk, Genworth seeks a final judgment order in interpleader finding that it has no further liability to the claimants to the Annuity Contract's proceeds named as Defendants in this action. (Dkt. No. 50.) However, Defendant Priscilla Ludlow, in her capacity as Independent Executor of the Estate of June A. Lee ("Estate"), contends that Genworth has additional liability to the Estate beyond the funds it has deposited with the Clerk. For that reason, the Estate has filed a motion for leave to file counterclaims against Genworth. (Dkt. No. 52.) For the reasons that follow, the Court denies without prejudice both the Estate's motion for leave to file counterclaims and Genworth's motion for final judgment.

## BACKGROUND

The following summarizes the allegations in Genworth's First Amended Complaint for Interpleader ("FAC," Dkt. No. 27).

Genworth, an insurance company, issued the Annuity Contract to June, as owner and annuitant. (FAC ¶¶ 1, 8, 10.) The Annuity Contract had a single premium of $51,904.95, an effective date of October 17, 2008, and an annuity commencement date of October 17, 2024. (*Id.* ¶ 10.)

June did not apply for the Annuity Contract herself. Instead, David Lee ("David") represented to Genworth that June had given him power of attorney to sign the application on June's behalf. (*Id.* ¶ 11.) Accordingly, around the time David submitted the annuity application, he presented Genworth with a statutory short-form power of attorney for property dated May 25, 2007 ("2007 POA"). (*Id.*) The 2007 POA, however, listed two different dates for its effective date and termination date. (*Id.* ¶¶ 12–13.) After Genworth alerted David to the issue, he provided an updated short-form power of attorney for property dated December 29, 2008 ("2008 POA"). (*Id.* ¶¶ 16, 18.)

Prior to David's submission of the 2008 POA, June made a $35,000 payment to Genworth to fund the Annuity Contract on October 10, 2008, and a second $16,904.95 payment on November 5, 2008. (*Id.* ¶¶ 19–20.) Genworth then held onto the $51,904.95 premium until it received the 2008 POA, at which point Genworth attached the premium to the Annuity Contract and, on January 2, 2009, issued the Annuity Contract to June. (*Id.* ¶¶ 21–22.) Initially, the Annuity Contract listed David, Lawrence Lee ("Lawrence"), and William Lee ("William") as beneficiaries. (*Id.* ¶¶ 10, 14.) Subsequently, on November 10, 2010, Genworth received a request to change the Annuity Contract's beneficiaries such that Lawrence, David, William, and

Defendant Balinda Williams-Lee would each receive 25% of the proceeds. (*Id.* ¶ 23.) On March 25, 2013, Genworth received another request to change the Annuity Contract's beneficiaries whereby Williams-Lee would receive 34% of the proceeds, David and William would receive 33% of the proceeds, and Lawrence would no longer be a beneficiary. (*Id.* ¶ 24.)

June passed away on October 19, 2020. (*Id.* ¶¶ 25–26.) Because June died before the annuity commencement date, the Annuity Contract's beneficiaries were entitled to share in a death benefit, which was $75,555.75 as of May 26, 2021. (*Id.* ¶¶ 27, 40.) Defendants Priscilla Ludlow and Benita Monique Cathey advised Genworth of June's passing on November 16, 2020. (*Id.* ¶ 25.) Ludlow and Cathey also informed Genworth of potential fraud concerning the Annuity Contract, which resulted in the beneficiaries being changed without June's authorization. (*Id.*) In particular, they challenged William and Williams-Lee's statuses as beneficiaries and claimed that June intended to change the Annuity Contract's beneficiaries to Ludlow, Cathey, and Defendant Joy Jeffreys, and further name Defendant Annette Williamson as a contingent beneficiary. (*Id.* ¶¶ 25, 28.) Genworth subsequently received deferred annuity claim forms from the Estate, Williamson, Ludlow, Jeffreys, Cathey, Williams-Lee, and William.[1] (*Id.* ¶¶ 33–39.)

## DISCUSSION

Genworth brought the present interpleader action to resolve the multiple actual or potential competing claims to the Annuity Contract's proceeds. "Interpleader is an equitable procedure used when the stakeholder is in danger of exposure to double liability or the vexation of litigating conflicting claims." *Aaron v. Mahl*, 550 F.3d 659, 663 (7th Cir. 2008). To justify proceeding on

---

[1] William was initially named as a Defendant in Genworth's interpleader claim but he subsequently passed away. Because no party properly moved to be substituted as William's successor within 90 days of service of a statement noting death, this Court dismissed William from the case pursuant to Federal Rule of Civil Procedure 25(a). (Dkt. No. 42.) Moreover, David died on November 22, 2019, and because he predeceased June, he had no claim to the death benefit. (FAC ¶¶ 27, 31.)

an interpleader claim, "the stakeholder must have a real and reasonable fear of double liability or vexatious, conflicting claims." *Indianapolis Colts v. Mayor & City Council of Baltimore*, 741 F.2d 954, 957 (7th Cir. 1984). While the claims of some interpleaded parties will ultimately be found to be without merit, that "is the very purpose of the proceeding and it would make little sense in terms either of protecting the stakeholder or of doing justice expeditiously to dismiss one possible claimant because another possible claimant asserts the claim of the first is without merit." *Aaron*, 550 F.3d at 663.

Genworth's interpleader claim is brought under Federal Rule of Civil Procedure 22.[2] Rule 22 allows a stakeholder who makes no claim to the funds at stake "and is willing to release [the funds] to the rightful claimant, to put the money in dispute into court, withdraw from the proceeding, and leave the claimants to litigate between themselves the ownership of the fund in court." *Com. Nat'l Bank of Chi. v. Demos*, 18 F.3d 485, 487 (7th Cir. 1994). Here, Genworth has already deposited the approximately $75,000 stake with the Clerk. Now, it requests that it be dismissed from the proceeding so that Defendants may litigate their claims to those funds before this Court. However, the Estate argues that Genworth has additional liability beyond the $75,000 stake. Specifically, the Estate contends that the Annuity Contract was invalid because David's 2007 POA and 2008 POA did not authorize him to execute it on June's behalf. And according to the Estate, because Genworth issued the Annuity Contract despite knowing of the issues with the 2007 POA and 2008 POA, Genworth's liability encompasses not just the $75,000 stake but also

---

[2] The interpleader remedy is codified in both rule form (Fed. R. Civ. P. 22) and statutory form (28 U.S.C. § 1335), with the primary distinction being their respective jurisdictional prerequisites. *Berthoud v. Veselik*, No. 01 C 6895, 2003 WL 1607661, at *2 (N.D. Ill. Mar. 26, 2003). For rule interpleader, jurisdiction "must be based upon the general jurisdiction statutes applicable to civil actions in the federal courts." *Arnold v. KJD Real Est., LLC*, 752 F.3d 700, 704 (7th Cir. 2014). Where, as here, jurisdiction arises under the diversity statute, 28 U.S.C. § 1332(a), there must be "complete diversity between the plaintiff-stakeholder and the claimant defendants." *Arnold*, 752 F.3d at 704. That requirement is met here, as Genworth is incorporated in Delaware with its principal place of business in Virginia, and Defendants are all Illinois citizens. (Compl. ¶¶ 1–7.)

the additional interest that would have accrued on the Annuity Contract's premium had Genworth not wrongfully taken possession of the premium funds. Thus, the Estate opposes Genworth's discharge from the action and further seeks leave to file counterclaims against Genworth for conversion and unjust enrichment. Before deciding whether to grant the Estate leave to amend its answer to include its counterclaims against Genworth and whether to enter final judgment for Genworth, the Court first clarifies the present procedural posture of this case.

## I.        Interpleader Procedure

An interpleader action proceeds in two stages. *See Aaron*, 550 F.3d at 663. "During the first stage, the court determines whether the interpleader complaint was properly brought and whether to discharge the stakeholder from further liability to the claimants. During the second stage, the court determines the respective rights of the claimants to the interpleaded funds." *Metro. Life Ins. Co. v. Johnson*, No. 11 C 8210, 2012 WL 2192283, at *2 (N.D. Ill. June 13, 2012) (quoting *Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258, 262 (3d Cir. 2009)). While the present matter currently remains at the first stage, the Court has already determined that Genworth faces a real and reasonable fear of double liability or conflicting claims and therefore concluded that interpleader is justified. Further, the Court has allowed Genworth to deposit the disputed stake with the Clerk. All that remains before proceeding to the second stage is to determine whether Genworth should be discharged from further liability.

According to the Estate, Genworth should not be discharged because it remains liable for damages in excess of the stake for issuing the Annuity Contract based on David's defective power of attorney. The Estate does not dispute the propriety of this action proceeding as an interpleader. Nonetheless, it asserts that, before moving to the second stage, the Court must resolve issues concerning the Annuity Contract's validity and Genworth's liability. Specifically, the Estate

believes that if the Annuity Contract is determined to be unauthorized and invalid, Genworth will incur liability stemming from the rescission of the contract and therefore must be interpleaded as a claimant at stage two. During an in-court hearing, this Court informed the parties that it had concluded that the validity of the Annuity Contract presents an issue better heard at stage two, as the resolution of that issue directly implicates Defendants' rights to the interpleaded funds. Further, the Court explained that Genworth is not a proper stage-two claimant because it makes no claim to any part of the $75,000 stake and is willing to release it to the Defendant or Defendants that are ultimately determined to be the rightful claimant. *See Principal Life Ins. Co. v. Noble*, No. 18-CV-4576, 2019 WL 1651750, at *3 (N.D. Ill. Apr. 17, 2019) ("Because [the life insurer] has no claim to the death benefit and has asserted that it 'is willing to release it to the rightful claimant,' the Court concludes that this is exactly the type of situation in which an interpleader action is appropriate." (quoting *Demos*, 18 F.3d at 487)).

That Genworth is not a claimant to the interpleaded funds does not necessarily mean that it can be dismissed from the action entirely. Indeed, the Court does not understand the Estate to be arguing that Genworth has any claim to the interpleaded funds. Instead the Estate asserts that Genworth has liability in excess of the stake—namely, it claims that Genworth is liable for the difference between the present value of the Annuity Contract's premium (*i.e.*, the stake) and the interest or return on investment Genworth earned by wrongfully taking possession of the premium.[3] In a typical interpleader action where the sole contested issue concerns each claimant's entitlement to the stake, "[t]he stake marks the outer limits of the stakeholder's potential liability." *Lee v. W. Coast Life Ins. Co.*, 688 F.3d 1004, 1011 (9th Cir. 2012). But, in some instances, "the

---

[3] The Estate acknowledges that it does not know how much Genworth earned from its possession of the premium but suggests that Genworth may have invested the premium at either the federal prime rate of 4.4% compounded monthly or the annual market rate of 6.0% compounded monthly.

stakeholder may be independently liable to one or more claimant," in which case "interpleader does not shield the stakeholder from tort liability, nor from liability in excess of the stake." *Id.* A claimant who claims that the stakeholder has some liability in excess of the stake should assert those claims in their answer as counterclaims. And "where a claimant brings an independent counterclaim against the stakeholder, the stakeholder is kept in the litigation to defend against the counterclaim, rather than being dismissed after depositing the disputed funds with the court." *Hovis*, 553 F.3d at 264; *see also William Penn Life Ins. Co. of N.Y. v. Viscuso*, 569 F. Supp. 2d 355, 361 (S.D.N.Y. 2008) ("Where there are multiple claims to the stake as well as counterclaims against the stakeholder, interpleader is proper, and the court may discharge the plaintiff from liability on the stake but retain jurisdiction over the plaintiff for purposes of adjudicating the counterclaims.").

Here, the Estate's contention that Genworth has additional liability in excess of the interpleaded funds falls outside the scope of interpleader. *Hovis*, 553 F.3d at 264 ("[I]n the typical case the protection provided by [the interpleader] device is limited to the interpleaded defendants' competing claims to the stake."). Nonetheless, Genworth cannot escape its alleged excess liability by bringing an interpleader action, as "the federal interpleader remedy does not shield a negligent stakeholder from tort liability for its creation of a conflict over entitlement to the interpleaded funds." *Lee*, 688 F.3d at 1014. Thus, it follows that the Estate "may seek to recover all damages directly and proximately caused by the negligent stakeholder's conduct" by way of a counterclaim. *Id.* The key requirement is that the counterclaim be "truly independent of who was entitled to the" proceeds at stake. *Hovis*, 553 F.3d at 264. "Put another way, where a stakeholder is allowed to bring an interpleader action, rather than choosing between adverse claimants, its failure to choose between the adverse claimants (rather than bringing an interpleader action)

cannot itself be a breach of a legal duty." *Id.* at 265; *see also Lee*, 688 F.3d at 1014 ("[A] disinterested stakeholder may not be subjected to liability for its failure to resolve the controversy over entitlement to the stake in one claimant's favor, but . . . a stakeholder whose alleged tort caused the controversy is not absolved of liability by filing an interpleader action.").

Although the Estate has long claimed that Genworth was liable to it in excess of the stake, its answer did not assert any counterclaims. Instead, the Estate believed that it could litigate Genworth's excess liability by first moving for summary judgment as to the validity of the Annuity Contract at stage one and then interpleading Genworth as a claimant at stage two. Only after the Court advised the Estate that the validity of the Annuity Contract was a stage two inquiry did the Estate seek leave to file counterclaims for conversion and unjust enrichment against Genworth. The Court now turns to consider whether the Estate should be granted leave to amend its answer to add those counterclaims.

## II.    Leave To File Counterclaims Not Asserted in Answer

Genworth contends that the Estate's conversion and unjust enrichment claims were compulsory counterclaims that should have been included in its answer to the FAC. Federal Rule of Civil Procedure 13(a) provides that:

> A pleading must state as a counterclaim any claim that—at the time of its
> service—the pleader has against an opposing party if the claim:
> (A) arises out of the transaction or occurrence that is the subject matter of the
> opposing party's claim; and
> (B) does not require adding another party over whom the court cannot acquire
> jurisdiction.

Fed. R. Civ. P. 13(a). Thus, Rule 13 requires compulsory "counterclaims to be stated at the time an answer is served." *Lerman v. Turner*, No. 10 C 2169, 2012 WL 1409526, at *1 (N.D. Ill. Apr. 23, 2012). Nonetheless, Federal Rule of Civil Procedure 15(a)(2) provides that if a party wishes to amend its pleading more than 21 days after it is served, it must seek leave of the court (assuming,

as here, it does not have the opposing party's consent). Rule 15(a)(2) further instructs that leave should be granted freely when justice so requires. However, leave should not be permitted "when there is undue delay, bad faith, dilatory motive, undue prejudice to the opposing party, or when the amendment would be futile." *Bethany Pharmacal Co. v. QVC, Inc.*, 241 F.3d 854, 861 (7th Cir. 2001).

The Estate's proposed Illinois-law counterclaims for conversion and unjust enrichment both seek to hold Genworth liable for accepting and retaining the Annuity Contract's premium despite knowing that David's power of attorney did not authorize him to execute the Annuity Contract on June's behalf. (*See* Estate's Mot. for Leave to File Countercls., Ex. 1, Proposed Countercls., Dkt. No. 52-1.) There is no real dispute that the Estate's counterclaims were compulsory counterclaims that should have been asserted in the complaint. Genworth contends that the Estate should not be granted leave to assert the counterclaims now because it unduly delayed in asserting the counterclaims, brings them in bad faith, and the counterclaims would be futile.

### A. Undue Delay and Bad Faith

While the Estate expressed its belief that Genworth was liable to it well before filing its answer, the Court does not believe the Estate unduly delayed in asserting its counterclaims. Instead, the Estate incorrectly believed that it did not need to assert its claims against Genworth until stage two of the interpleader proceeding. The Court does not find this misunderstanding unreasonable. Indeed, "there are no codified procedures or rules governing interpleader actions," *Prudential Ins. Co. of Am. v. Ianetti*, No. 19-21849 (SDW) (LDW), 2021 WL 71593, at *2 n.4 (D.N.J. Jan. 7, 2021) (internal quotation marks omitted), and there is a relative dearth of caselaw from within this Circuit regarding interpleader procedure. Once the Court informed the Estate that

matters concerning any potential Genworth liability in excess of the stake would need to be
litigated by way of a counterclaim, the Estate promptly sought leave to file its counterclaims. For
that reason, the Court declines to find that the Estate's failure to state its counterclaims when it
first answered the FAC warrants denying leave to amend. In addition, the Court rejects
Genworth's contention that the Estate's counterclaims are a bad faith effort to obtain recovery
against Genworth for the wrongdoing of another, now unavailable party (David), as
unsubstantiated speculation.

### B. Futility

Having found that the Estate did not unduly delay in seeking leave to file counterclaims
and does not do so now in bad faith, the Court must now determine whether leave to amend would
be futile. A motion for leave to amend may be denied on futility grounds where the proposed
amended pleading would not survive a motion to dismiss. *McCoy v. Iberdrola Renewables, Inc.*,
760 F.3d 674, 685 (7th Cir. 2014). A motion to dismiss a counterclaim is evaluated under Federal
Rule of Civil Procedure 12(b)(6). *White v. Richert*, No. 15 C 8185, 2016 WL 6139929, at *3
(N.D. Ill. Oct. 21, 2016). Accordingly, "the court accepts the allegations in the . . . counterclaim
as true, viewing all facts, as well as any inferences reasonably drawn therefrom, in the light most
favorable to the" counter-plaintiff. *Cont'l Cas. Co. v. Duckson*, No. 11-CV-00459, 2011 WL
2293873, at *3 (N.D. Ill. June 9, 2011). A counterclaim will survive a motion to dismiss where it
alleges "enough facts to show that, on its face, the requested claim is plausible." *White*, 2016 WL
6139929, at *3.

The Estate's first counterclaim is for conversion. To state a claim for conversion in
Illinois, a plaintiff must plead that "(1) he has a right to the property; (2) he has an absolute and
unconditional right to the immediate possession of the property; (3) he made a demand for

Case: 1:21-cv-02873 Document #: 63 Filed: 07/20/22 Page 11 of 14 PageID #:747

possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Loman v. Freeman*, 890 N.E.2d 446, 461 (Ill. 2008) (internal quotation marks omitted). The fatal flaw in the Estate's conversion claim relates to the third element, which requires a demand for possession. "[M]aking a demand prior to filing a lawsuit is necessary to sustain a conversion claim under Illinois law." *Stevens v. Interactive Fin. Advisors, Inc.*, 830 F.3d 735, 742 (7th Cir. 2016). Such a requirement is meant "to facilitate the return of the desired property to the plaintiff before being required to submit to unnecessary litigation." *Id.* (internal quotation marks omitted).

Here, the issue is not that the Estate does not allege that it made a demand for possession of the Annuity Contract's proceeds. Indeed, the Estate alleges that, following June's death, "Genworth received a Deferred Annuity Claim Form from the Estate . . . seeking a 'full distribution' of the 'amount available.'" (Proposed Countercls. ¶¶ 15, 18.) However, the Estate's claim was just one of several competing claims to the Annuity Contract's death benefit. And those competing claims are what led Genworth to initiate the present interpleader action.

At bottom, the proposed conversion counterclaim faults Genworth for not immediately distributing the Annuity Contract's death benefit to the Estate but instead availing itself of the interpleader procedure to resolve the multiple conflicting claims to the proceeds. Yet, as discussed above, a stakeholder cannot be held liable for bringing an interpleader action rather than choosing between adverse claimants. *See, e.g.*, *RBC Bank (USA) v. Holiday Isle, LLC*, No. 09-0038-WS-C, 2009 WL 3031186, at *3 (S.D. Ala. Sept. 14, 2009) (dismissing a counterclaim "alleg[ing] that the very act of interpleading [the contested funds] constituted a conversion" because the counter-plaintiff "would have to necessarily show that [the stakeholder] should have resolved the controversy and made a choice between the adverse claimants" (internal quotation marks

omitted)). To allow Genworth "to be exposed to liability under these circumstances would run counter to the very idea behind the interpleader remedy—namely, that a stakeholder should not be obliged at his peril to determine which claimant has the better claim." *Hovis*, 553 F.3d at 265 (internal quotation marks omitted). For that reason, the Court concludes that the Estate's conversion counterclaim is futile.

Next, the Estate asserts a claim for unjust enrichment. A plaintiff pleading unjust enrichment "must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989). Yet the Seventh Circuit has held that "[u]nder Illinois law, there is no stand-alone claim for unjust enrichment." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 648 (7th Cir. 2019). "Rather, unjust enrichment is a condition resulting from unlawful or improper conduct like fraud and may be redressed by a cause of action based upon that improper conduct." *In re Clearview AI, Inc., Consumer Priv. Litig.*, No. 21-cv-0135, 2022 WL 444135, at *12 (N.D. Ill. Feb. 14, 2022). Apparently, the Estate is not aware of the Seventh Circuit precedent on this issue, as it defends its unjust enrichment claim's viability as an independent cause of action. But given that the Illinois Supreme Court has never definitively held that a plaintiff may maintain a stand-alone unjust enrichment claim, this Court is bound by the Seventh Circuit's determination of the matter. *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004) (explaining that district courts must follow the Seventh Circuit's interpretations of state law until "[a] decision by a state's supreme court terminates the authoritative force of" the Seventh Circuit's interpretation).

Moreover, because there is no independent unjust enrichment cause of action, "an unjust enrichment claim will stand or fall with related claims founded on the same improper conduct." *Anderson v. Rush St. Gaming, LLC*, No. 1:20-cv-04794, 2021 WL 4439411, at *7 (N.D. Ill. Sept. 28, 2021) (internal quotation marks omitted). While the Estate makes a one-sentence, conclusory assertion that its unjust enrichment claim is not tied to its conversion claim, the Court disagrees. Both claims are founded on the Estate's allegation that Genworth improperly issued the Annuity Contract and took possession of the premium even though it knew of that David lacked authority under the 2007 POA and 2008 POA to enter into the agreement on June's behalf. Consequently, this Court's conclusion that the conversion claim is futile also dooms the Estate's unjust enrichment claim.

### III. Judgment for Genworth

Because the Court has denied the Estate's motion for leave to file counterclaims, it must now decide whether to enter judgment for Genworth and discharge it from liability. Insofar as Genworth seeks to be dismissed from the interpleader claim, such dismissal is appropriate as Genworth makes no claim to any portion of the funds deposited with the Clerk. But in moving for judgment, Genworth seeks to absolve itself of all liability relating to the Annuity Contract, including any liability in excess of the stake. While this Court has found that the Estate's conversion and unjust enrichment claims are futile, it cannot conclude at this time that the Estate will not be able to plead a viable counterclaim against Genworth. To the contrary, as discussed above, a stakeholder can be held liable where, as here, its actions allegedly caused the controversy over the interpleaded funds. The Court will therefore deny the Estate's motion for leave to file counterclaims without prejudice and permit the Estate another opportunity to state a claim against Genworth. And so long as there remains a possibility that Genworth will have to defend itself

against the Estate's counterclaims, it cannot be dismissed from the action. Consequently, Genworth's motion for final judgment is also denied without prejudice.

## CONCLUSION

For the foregoing reasons, the Estate's motion for leave to file counterclaims (Dkt. No. 52) and Genworth's motion for final judgment order in interpleader (Dkt. No. 50) are denied without prejudice.

ENTERED:

Dated:  July 20, 2022

_____
Andrea R. Wood
United States District Judge